NOTICE
Decision filed 10/25/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190528-U

NO. 5-19-0528

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-CF-519 |
| | ) | |
| DONALD R. MARSHALL, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where postconviction counsel did not provide unreasonable assistance in his review of the trial court record and in his amendment of the postconviction petition, we affirm the trial court's dismissal of the postconviction petition.

¶ 2    The State initially charged the defendant with two counts of predatory criminal sexual assault of a child under the age of 13—counts I and II (720 ILCS 5/11-1.40(a)(1) (West 2010)) and two counts of aggravated battery to a child under the age of 13—counts III and IV (*id.* § 12-3.05(b)(2)). Count III involved the minor that was allegedly assaulted or battered in counts I and II. A second child under the age of 13 was the victim in count IV.

¶ 3    Later, on January 30, 2014, following a grand jury hearing, the State filed its amended indictment that added a fifth count. The original counts III and IV were relabeled as counts IV and V. A new count III charged the defendant with one count of criminal sexual assault involving a

1

new victim (*id.* § 11-1.20(a)(3)). Count III was added after a DNA test revealed that the defendant was biologically connected to the aborted fetus of the third underage victim.

¶ 4 Defendant entered a plea of not guilty to all charges. The State and the defendant eventually negotiated a plea. On December 5, 2014, the defendant withdrew his not guilty pleas to counts II and III. The State agreed to dismiss counts I, IV, and V. The defendant's defense attorney respectfully asked the trial court to sentence his client to 7 years on count II and 10 years on count III to be served consecutively, with credit for time served to that date. The sentences were to be served at 85%. The trial court entered the sentence as agreed to by the parties and advised the defendant that he would also be subject to a period of mandatory supervised release after discharge from the Illinois Department of Corrections. The mandatory supervised release period would be between three years and up to a maximum period of natural life. The defendant did not seek to withdraw his guilty plea and file a direct appeal.

¶ 5 This appeal involves the defendant's postconviction petition. On October 5, 2015, the trial court found that the defendant's postconviction petition set forth the gist of a constitutional claim. The trial court appointed counsel, and the case advanced to the second stage. Appointed counsel amended the petition on January 30, 2018. The State filed a motion to dismiss the postconviction petition on July 29, 2019. After a hearing, the trial court granted the State's motion and dismissed the postconviction petition on December 10, 2019.

¶ 6 The defendant appeals the dismissal of his postconviction petition and contends that his appointed postconviction counsel provided unreasonable assistance. For the reasons stated in this order, we affirm.

¶ 7                                    I. BACKGROUND

¶ 8     On March 11, 2013, the State charged the defendant by information with two counts of predatory criminal sexual assault of a child, both Class X felonies, and two counts of aggravated battery to a child, both Class 3 felonies. In count I, the defendant was accused of committing an act of sexual penetration upon a minor under the age of 13, A.S., by placing his penis in the mouth of A.S. In count II, the defendant was accused of committing an act of sexual penetration upon a minor under the age of 13, A.S., by placing his penis in the anus of A.S. In count III, the defendant was accused of committing aggravated battery to a child under the age of 13, A.S., by striking A.S. about her head and body. In count IV, the defendant was accused of committing aggravated battery to a child under the age of 13, A.F., by pushing A.F. into a door and causing injury.

¶ 9     After the defendant was initially charged, he hired his first attorney, William Starnes III. However, the relationship deteriorated when the defendant was not able to provide payment to attorney Starnes. The trial court allowed Starnes to withdraw as counsel for the defendant.

¶ 10    On October 4, 2013, the Madison County Public Defender's Office was appointed to represent the defendant. Shortly after the appointment, the Public Defender's Office, by attorney Tyler Bateman, filed a motion to withdraw from this case due to a conflict of interest because the office had already been appointed as the guardian *ad litem* for the two victims in this case.

¶ 11    On October 31, 2013, the trial court appointed an attorney, John Delaney, to represent the defendant. However, after meeting with the defendant, Delaney filed a motion to withdraw citing a conflict of interest.  On March 12, 2014, the trial court granted Delaney's motion to withdraw.

¶ 12    On January 15, 2014, the State produced additional evidence that included medical records related to A.S. and A.S.(2).[1]

¶ 13    The State then convened a grand jury. During the grand jury hearing, Highland detective Scott Athmer testified that he learned that a new victim, As.S., was pregnant and that it was suspected that the defendant was the father of the unborn child. Thereafter, DNA testing on As.S.'s aborted fetus resulted in a DNA match between the fetus and the defendant. At the conclusion of the grand jury hearing, an amended indictment was issued in which the State added a new count III that charged the defendant with criminal sexual assault (a Class 1 felony) for placing his penis in As.S's sex organ when she was both under the age of 18 and was a member of the defendant's family. Counts I and II remained the same, but the victim identity in those two counts included a date of birth for A.S. of June 17, 2001. In its brief on appeal, the State identifies the A.S. in counts I, II, and IV (original count III) as Am.S. Count III involved the new victim, As.S. Count V (original count IV) involves the victim named A.F.

---

[1]The discovery documents are not included in the record on appeal, and because underage victims are identified with initials and not by name, there is some confusion about the identity of the victims based upon the record on appeal. The initial indictment contained three counts naming A.S. as the victim, and one count naming A.F. as the victim. The medical records filed with the court in mid-January 2014 involve two minors named A.S. The first A.S. has a date of birth of June 4, 2000, while the second A.S. has a date of birth of June 17, 2001.

The subsequent amended indictment added a count for criminal sexual assault (new count III) involving a victim, also identified as A.S., but with a date of birth, July 11, 1998. The amended indictment specifies that the A.S. victim in counts I and II had a date of birth of June 17, 2001. No date of birth is listed for the A.S. victim in count IV (original indictment count III).

We do not know if the charge in new count IV (original count III) involved the A.S. victim with the June 4, 2000, date of birth, whose medical records were provided by the State in supplemental discovery. Alternatively, the June 4, 2000, date of birth listed in the January 15, 2014, filing could have been a typographical error. However, as the State agreed to dismiss counts I, IV, and V of the new indictment as part of the defendant's plea deal, the specific identity of the A.S. in count IV is not relevant.

¶ 14    The defendant informed the trial court that he planned to hire a private attorney. The defendant was not able to find an attorney, and ultimately on April 9, 2014, he asked the trial court to appoint an attorney to represent him.

¶ 15    On April 25, 2014, the trial court appointed an attorney, Rand Hale, who served as the defendant's attorney when the plea was negotiated.

¶ 16    In May 2014, the defendant sent a series of letters/motions to the court. The May 6, 2014, letter requested a change of judge in that he did not believe he could receive a fair trial. The May 7, 2014, letter requested that he be allowed to review all discovery and stated that he believed he had been denied basic information regarding the charges and that his accusers may be making false allegations based on his race. The May 9, 2014, filing sought a dismissal of the charges "and/or [to] show probable cause for defendant's incarceration." He stated that he requested the right to challenge the false charges and to have his side of the story heard. The defendant also sought to inform the court that he was willing to plead guilty "for what I actually did—not trumped up accusations!"

¶ 17    On December 5, 2014, the defendant pled guilty to one count of predatory criminal sexual assault (count II) and one count of criminal sexual assault (count III). Before the pleas were accepted, the trial court explained that it needed to explain the rights and possible penalties to the defendant. The defendant stated that he understood everything the trial court explained to him. The trial court then informed the defendant of the penalty range for the two crimes at issue. The defendant stated that he was aware of the penalty possibilities, including the statutory mandate that the sentences be served consecutively. The defendant stated that he had not been forced or threatened and that he was entering his pleas freely and voluntarily. Further, the defendant stated that he had discussed the pleas with attorney Rand Hale and that he was satisfied with Hale's

representation. After accepting the guilty pleas and sentencing the defendant, the court proceeded to inform the defendant of his right to appeal, and explained that because he had pled guilty, he could not appeal until after he asked to withdraw his pleas. Again, the defendant indicated that he understood.

¶ 18    The defendant did not attempt to withdraw his guilty pleas. However, on March 30, 2015, the defendant filed a *pro se* motion with this court seeking leave to file a late notice of appeal from the trial court's December 2, 2014, order sentencing him to a total of 17 years of imprisonment. The Office of the State Appellate Defender was appointed to represent the defendant in that matter but conceded that this court lacked jurisdiction because the defendant entered fully negotiated guilty pleas and failed to file a motion to withdraw the pleas. See Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013). We concluded that the defendant waived his right to a direct appeal and dismissed his appeal.

¶ 19    On September 21, 2015, the defendant filed his *pro se* postconviction petition. Specifically, he alleged that plea counsel was ineffective because he told the defendant what to say at the plea hearing and at the sentencing hearing; plea counsel told him that if the defendant took the plea deal, that he would appeal and obtain a lesser sentence; and plea counsel failed to provide him with copies of evidentiary documents and told him that he did not need to read the documents. The defendant also alleged that one of the victims lied about him, that the prosecutor treated him unfairly, and that the trial court and appointed plea counsel lied to him about the credit he would receive for pretrial detention. On October 5, 2015, the trial court found that the defendant had stated the gist of a constitutional claim and appointed counsel to represent him. Initially, an attorney, Jack Daughtery, was appointed to represent the defendant, but after missing numerous

6

court appearances, the trial court vacated the appointment. On January 25, 2016, the court appointed an attorney, Phillip Baldwin, to represent the defendant.

¶ 20    On January 30, 2018, postconviction counsel filed an amended postconviction petition. In this amended petition, the defendant alleged that plea counsel was ineffective; that the trial court lied about his sentence credit; that he was not allowed to review the State's evidence; that legal counsel only visited him five times during the 21 months he was detained in the county jail; that the prosecutor mistreated him; that plea counsel failed to file a motion to withdraw his guilty plea; that plea counsel convinced him to accept a guilty plea although at the plea hearing the terms were different than originally outlined; and that his sentence was excessive. No affidavit was included with the amended postconviction petition.

¶ 21    The State filed a motion to dismiss the defendant's amended postconviction petition on July 29, 2019. The State argued that the defendant failed to set forth allegations substantially establishing a constitutional violation in that his claims of ineffective assistance of counsel were vague and insufficient; that any claim that the prosecutor acted inappropriately was negated by the favorable sentence he received; that the defendant could have filed a motion to withdraw his guilty plea; and that his sentence was not excessive considering the facts.

¶ 22    On December 10, 2019, the defendant filed an affidavit reiterating the allegations listed in the amended postconviction petition. The defendant stated that no motion to withdraw his guilty plea was filed within 30 days of the final order, but that he filed an untimely motion that the trial court dismissed on June 5, 2015. The defendant's affidavit recites the allegations previously made in the amended postconviction petition. On that same date, counsel filed his Supreme Court Rule 651(c) certificate with the court. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

7

¶ 23    In addition to the court filings, the trial court held its hearing on December 10, 2019. At the conclusion of the arguments of counsel, the trial court granted the State's motion to dismiss the amended postconviction petition preventing the petition from advancing to a third stage hearing. In essence, the trial court found that there was no foundational substance to the claims the defendant raised.

¶ 24    In its order dismissing the amended postconviction petition, the court noted that it took all well-pled facts as true in reaching its conclusion that the defendant failed to make a substantial showing that his constitutional rights were violated. While the defendant alleged that plea counsel was ineffective, the court found that the claim was generic in nature with no details of how plea counsel was ineffective. The defendant claimed that the judge lied to him about credit toward his sentence, but he failed to articulate what the falsehood was. The postconviction judge noted that he had been the sentencing judge. He reviewed the mittimus which reflected the proper credit, and he also reviewed the transcript of the sentencing hearing which matched up to the mittimus. While the defendant claimed that he was not provided with the State's evidence by plea counsel, the court found that the claim was merely a broad allegation "without any specificity as to how this negatively impacted him or how it would have changed the case." The court noted that the defendant had sent several letters to the court offering to plead guilty. Moreover, the court stated that the defendant was unable to show how he was prejudiced. The court concluded that the defendant did not make a substantial showing of a constitutional deprivation. Turning to the issue that plea counsel only visited the defendant on three occasions, the court noted that the defendant's argument alleged that the time frame was 21 months, but the court noted that plea counsel had not represented the defendant when the case began. The court questioned how many times the defendant was visited by his previous attorney and whether that attorney went over the State's

8

discovery with him. Overall, the court concluded that the claim did not rise to the level of a substantial showing of a constitutional deprivation. The court discounted the defendant's claim that the plea arrangement to which he agreed was different than the plea deal when he arrived at his sentencing hearing. Again, the defendant provided no details about the alleged difference. Finally, the court stated that the defendant's sentence of 17 years when he faced 10 to 75 years was in no way excessive, and thus he was not deprived of his constitutional rights.

¶ 25    From this order, the defendant filed a notice of appeal. After he filed the notice of appeal, the defendant's postconviction counsel filed an untimely motion to reconsider the court's December 10, 2019, order. In this motion, counsel argued that the defendant's affidavit showed support for his ineffective assistance of counsel claim and that the defendant should be allowed to prove that plea counsel told him that he would file a motion to withdraw the plea. On January 29, 2020, the trial court denied the motion to reconsider as untimely.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, the defendant argues that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) because he did not adequately review the trial court record of proceedings and failed to properly amend the petition to adequately represent his claims. He asks this court to remand the case back to the trial court for new second-stage postconviction proceedings.

¶ 28    An individual who has been convicted and is serving an Illinois criminal sentence can file a petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2014)) to allege that their Illinois and federal constitutional rights were denied. *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). A proceeding under the Post-Conviction Hearing Act has three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418-19 (1996). Here, the postconviction court dismissed this

case at the second stage. At the second stage, the postconviction court appoints an attorney to represent the defendant. 725 ILCS 5/122-4 (West 2014). The State must file an answer or file a motion to dismiss. *Id.* § 122-5. Then, the postconviction court must determine if the defendant has made a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The postconviction court must accept all well-pleaded factual allegations as true, and the court must not engage in any fact-finding or credibility determinations. *Coleman*, 183 Ill. 2d at 385. The trial court must dismiss the petition if the defendant has not made the required substantial showing of a constitutional violation. *People v. Ward*, 187 Ill. 2d 249, 255 (1999). The postconviction court will hold an evidentiary hearing if the defendant gets past this second stage to the third stage. 725 ILCS 5/122-6 (West 2014).

¶ 29     Here, the defendant does not appeal from the postconviction court's order granting the State's motion to dismiss his amended petition. Instead, he contends that his postconviction counsel provided unreasonable assistance. Even though postconviction counsel filed a Rule 651(c) certificate with the court, the defendant argues that counsel failed to review the entire record of the trial court proceedings and specifically failed to review portions referenced by the defendant in his *pro se* postconviction petition. The defendant also argues that postconviction counsel failed to shape the claims as required to adequately present his claims.

¶ 30     We initially review the level of legal assistance required in a postconviction process. We note that the right to counsel in postconviction proceedings is based in statute—not the federal and state constitutions. See 725 ILCS 5/122-4 (West 2018). Therefore, postconviction defendants are only guaranteed the level of legal assistance required by the Post-Conviction Hearing Act. *People v. Owens*, 139 Ill. 2d 351, 364 (1990). While a reasonable level of assistance is required by section 122-4 of the Post-Conviction Hearing Act (725 ILCS 5/122-4 (West 2018)) and Illinois Supreme

Court Rule 651(c) (eff. July 1, 2017), defendants are not guaranteed the same level of legal assistance constitutionally guaranteed to defendants at trial. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); *People v. Greer*, 212 Ill. 2d 192, 204 (2004); *Owens*, 139 Ill. 2d at 364.

¶ 31 The Post-Conviction Hearing Act does not require that postconviction counsel provide more than "reasonable assistance," and thus, any claim of ineffective assistance of postconviction counsel is outside of the scope of the Act and is not allowed. *People v. Wright*, 149 Ill. 2d 36, 64 (1992). "A defendant may not properly assert a constitutional claim of ineffective assistance of postconviction counsel [citation] because a postconviction petitioner is guaranteed only the level of assistance provided by the Post-Conviction Hearing Act." *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003); *People v. Davis*, 156 Ill. 2d 149, 158-59 (1993) (citing *People v. Flores*, 153 Ill. 2d 264, 276 (1992)).

¶ 32 When a defendant claims that postconviction counsel deficiently performed his or her duties or in some other way failed to provide reasonable assistance, "the defendant must show not only how the attorney's performance was deficient or unreasonable but also what prejudice resulted from that deficiency." *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58. Therefore, even if this court found that counsel provided less than reasonable assistance in his postconviction representation, our inquiry is not complete. The defendant must also establish that he was prejudiced because of the unreasonable assistance. *Id.*

¶ 33 Before we review the specific claims raised by the defendant on appeal, we will review the three obligations imposed upon postconviction counsel by Supreme Court Rule 651(c). Supreme Court Rule 651(c) provides the foundation for our appellate review. To ensure reasonable assistance, Rule 651(c) requires that the record in postconviction proceedings demonstrate that postconviction counsel meet three specific obligations. *People v. Lander*, 215 Ill. 2d 577, 584

11

(2005). Counsel must (1) consult with the defendant to ascertain his claims of error, (2) examine the trial court record, and (3) make any amendments to the petition that are necessary to adequately present the defendant's claims to the postconviction court. Ill. S. Ct. R. 651(c). The duty to amend the petition requires postconviction counsel to "shape[ ] the [defendant's] claims into proper legal form." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). Appointed counsel must make amendments deemed necessary to "adequately" present the claims the defendant raised in the *pro se* petition. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 30 (citing *People v. Turner*, 187 Ill. 2d 406, 412 (1999)). However, postconviction counsel is not required to file an amended petition if the claims raised by the defendant lack merit. *Id.*; *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Similarly, the Rule 651(c) requirement that postconviction counsel must examine the record only requires that counsel "examine as much of the [record] as is necessary to adequately present and support those constitutional claims raised by the [defendant]." *Davis*, 156 Ill. 2d at 164.

¶ 34    One aspect of "reasonable assistance" is compliance with Supreme Court Rule 651(c). Ill. S. Ct. R. 651(c); *People v. Daniels*, 388 Ill. App. 3d 952, 960 (2009) (citing *People v. Bashaw*, 361 Ill. App. 3d 963, 967 (2005)). A Rule 651(c) certificate filed by postconviction counsel presents a rebuttable presumption that counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. The defendant has the burden to overcome this presumption by establishing that his or her postconviction counsel did not comply with the mandatory Rule 651(c) duties. *Id.* Substantial compliance with the Rule 651(c) duties is deemed sufficient. *Davis*, 156 Ill. 2d at 164; *People v. Johnson*, 232 Ill. App. 3d 674, 679 (1992). The question of whether the defendant was provided with a reasonable level of assistance is reviewed *de novo*. *Wallace*, 2018 IL App (5th) 140385, ¶ 31.

12

¶ 35    We start with the Rule 651(c) certificate filed with the court. Postconviction counsel filed his certificate with the court on December 10, 2019, and included language directly quoting the three Rule 651(c) obligations. Counsel's form appears to be a preprinted form with blanks for the name of the defendant, the case number, and the name of postconviction counsel. The form also contained lines for the filing date and postconviction counsel's signature. In form, the Rule 651(c) certificate filed in this case was compliant with the requirements of the rule, and thus there is a rebuttable presumption that postconviction counsel provided reasonable assistance. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 36    We note that if postconviction counsel concluded that the defendant's *pro se* claims were not supported with evidence, appointed counsel was not required to file an "amended" postconviction petition. *Wallace*, 2018 IL App (5th) 140385, ¶ 30. Here, by filing the petition, postconviction counsel implicitly acknowledged that the claim potentially had merit. " 'Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments.' " *Greer*, 212 Ill. 2d at 207 (quoting *McCoy v. Court of Appeals*, 486 U.S. 429, 436 (1988)).

¶ 37         1. Rule 651(c) First Requirement—Consultation With Defendant

¶ 38    Turning to the allegations raised by defendant on appeal, we note that the defendant does not contend that his attorney failed to comply with the first Rule 651(c) requirement—that attorney Baldwin consulted with the defendant to ascertain his contentions of error. As the State points out, Baldwin's consultation with the defendant is documented in the record on appeal. As appointed postconviction attorneys are reimbursed by the court's order, attorney Baldwin prepared and filed billing invoices that detailed what actions he took in this case, and the amount of time spent in

13

doing so. From those invoices, attorney Baldwin corresponded with the defendant and the record reflects that Baldwin requested additional time to prepare the amended petition because he was encountering a scheduling problem to meet with the defendant at the jail. We also note that the affidavit signed by the defendant and filed with the court on the date of the December 10, 2019, hearing was notarized by attorney Baldwin, further establishing that he had met with the defendant.

¶ 39 Although the defendant acknowledges that attorney Baldwin consulted with him, the defendant contends that he rebutted the presumption that Baldwin provided reasonable assistance because of his failings relative to the second and third Rule 651(c) duties—examination of the trial court record and making amendments to the *pro se* petition necessary to adequately present the defendant's claims.

¶ 40 2. Rule 651(c) Second Requirement—Examination of the Trial Court Record

¶ 41 The defendant frames his claim—that attorney Baldwin failed to examine the trial court record—from a different perspective. The defendant alleges that if counsel had fully and completely examined the trial court record, he would have determined that given the fact that plea counsel only met with the defendant three times, it was inconceivable that plea counsel would have had the time to fully review the State's discovery with the defendant. The record reflects that four attorneys represented the defendant during the 21 months he was jailed while awaiting trial. The record reflects that attorney Baldwin examined the jail visit logs. From these visit logs, Baldwin determined that the attorneys who represented the defendant visited him a combined total of five times during his 21 months of pretrial detention.

¶ 42 Attorney Baldwin focused his efforts solely on the time that the defendant was represented by plea counsel and not on the entirety of the 21 months. The time frame at issue was from May 6, 2014, when attorney Hale entered his appearance, until the plea and sentencing hearing on

14

December 5, 2014—a time frame of approximately seven months. From the record of the postconviction hearing, we know that attorney Baldwin reviewed the record and determined that plea counsel only visited the defendant on three occasions. From attorney Baldwin's invoice to the court, his examination of the record was documented as taking place on November 30, 2016. Additionally, Baldwin indicated that while he was with the defendant, he reviewed hours of witness interviews. Baldwin also requested copies of the jail logs for visits with the defendant. During a visit with the defendant, attorney Baldwin provided a copy of these jail logs to the defendant. Baldwin attached a copy of the jail logs as an exhibit to the defendant's affidavit filed with the court on December 10, 2019.

¶ 43    In response, the State reviewed the timing of the production of evidence in this case. That evidence near conclusively established the defendant's guilt on one of the charges. On January 15, 2014, the State provided the DNA evidence establishing the connection between the defendant and the aborted fetus of As.S., one of his victims, to the defendant's attorney. Plea counsel had not yet been appointed to represent the defendant. From the jail visit logs, the State determined that from the date that the DNA evidence was produced (January 15, 2014), until the date plea counsel was appointed (April 25, 2014), no attorney visited the defendant at jail. Thus, the defendant could not have reviewed the DNA evidence with any attorney other than plea counsel. As the defendant ultimately pled guilty to the count supported by the DNA evidence, the State argues that the defendant's review of this evidence with plea counsel was essential to his decision to enter the plea agreement. We agree.

¶ 44    The amended postconviction petition filed by attorney Baldwin did not specifically identify plea counsel as the attorney who met with the defendant a limited amount of time. However, the supporting documentation and comments at the hearing directly referenced attorney Rand Hale,

15

the defendant's plea counsel—the attorney who met with the defendant regarding the critical DNA evidence produced by the State related to the criminal sexual assault crime. We do not find that attorney Baldwin deficiently examined the trial court record by not specifying the other visits by counsel representing the defendant before plea counsel's appointment. Once the DNA evidence was obtained, the path to a plea deal became obvious, and the amount of time the other attorneys spent with the defendant examining the State's evidence was not critical.

¶ 45　　Accordingly, we find that the defendant failed to rebut the presumption that postconviction counsel Baldwin reviewed the necessary portions of the trial court record. As the ineffective assistance of counsel claim was limited to plea counsel, we do not find that Baldwin's choice to focus on plea counsel and not on the previous three attorneys who represented the defendant amounted to unreasonable assistance.

¶ 46　　　　　3. Rule 651(c) Third Requirement—Adequate Amendment of Petition

¶ 47　　The defendant raises several issues relative to the amendment of his *pro se* postconviction petition. He argues that postconviction counsel Baldwin made only conclusory statements about plea counsel's alleged ineffective assistance and failed to support the petition with necessary affidavits and documentation. As stated earlier in this order, there is no requirement that appointed counsel amend the *pro se* postconviction petition. Ill. S. Ct. R. 651(c). Furthermore, appointed counsel must only make necessary amendments required to adequately present the defendant's claims. *Id.* To fulfill the requirements of Rule 651(c), counsel must not advance frivolous or spurious claims on the defendant's behalf. *Greer*, 212 Ill. 2d at 205. Moreover, a court can reasonably presume that postconviction counsel made a concerted effort to obtain supporting evidence but was unsuccessful in those efforts. *People v. Johnson*, 154 Ill. 2d 227, 241 (1993).

16

¶ 48    The defendant cites *People v. Dixon*, 2018 IL App (3d) 150630, as support for his claim that attorney Baldwin did not adequately amend his petition to present his claims. In *Dixon*, the appellate court remanded the case back to the trial court so that postconviction counsel could file a new amended postconviction petition to adequately present the defendant's claims. *Id.* ¶¶ 21, 26. The appellate court found that the record rebutted the presumption that postconviction counsel made the necessary amendments because counsel did not allege that the defendant was prejudiced by his trial counsel's deficiencies. *Id.* ¶ 17. Further, although postconviction counsel attached the defendant's affidavit to the amended petition, he failed to have the affidavit notarized. *Id.* ¶ 23. The court directed postconviction counsel on remand to allege any specific facts that support the claims. *Id.* ¶ 24.

¶ 49    We find this case to be distinguishable from *Dixon* as appointed counsel did not fail to provide *any* factual or evidentiary support for the defendant's claim that plea counsel provided ineffective assistance. The defendant's *pro se* petition alleged inadequate representation by plea counsel relative to claimed promises about the plea and sentencing credit, as well as plea counsel's alleged refusal to allow the defendant to review the State's evidence. Postconviction counsel amended the petition to allege the legal theory that plea counsel provided ineffective assistance and supported that legal theory with applicable legal case citations. Moreover, postconviction counsel provided additional factual support for the defendant's ineffective assistance claims with the defendant's affidavit, detailing the limited jail visits by plea counsel, supported with the documentation from the jail visit logs. From the transcript of the hearing, postconviction counsel vigorously argued the ineffective assistance issue in that the State ignored the facts of plea counsel's minimal visits/consultations with the defendant:

> "[O]ver the year and a half period when [the defendant] was incarcerated in the Madison County Jail he was attended or visited or communicated with his court-appointed Attorney

17

Rand Hale less than three times, for a total visitation time of less than 15 minutes, according to the defendant. ***

Each of those visits were actually situations where Mr. Hale visited multiple clients in the Madison County Jail. And the total duration of those visits point out the most serious basis for our argument of ineffective assistance of counsel ***.

*** [T]he defendant claims he was not allowed to review the discovery produced by the state in his case. Now [the defendant's] discovery is extensive. There are some half a dozen videotaped witness interviews, depositions, documents. The interview themselves to be played, which I played with [the defendant,] you know, take up hours and hours of interview time. I don't believe there is any possibility based upon the record of the transactions at the jail that there could be a block of time where Mr. Hale met with [the defendant] and produced the full discovery in the case for review with him.

* * *

*** [I]t is the defendant's position that the facts simply show that he was not provided an opportunity to review his discovery in this case. That is one of the bedrock principals of any criminal defense, your Honor, the opportunity to review the evidence against you, to participate fully in your own defense."

With this argument, postconviction counsel inferred that plea counsel essentially provided the defendant with no legal assistance—in his apparent failure to allow the defendant the opportunity to review the evidence against him. However, postconviction counsel provided specific facts and supportive documents regarding his claim that plea counsel provided the defendant with ineffective assistance of counsel. Additionally, as evidenced in postconviction counsel's arguments quoted in this paragraph, postconviction counsel clearly alleged that the defendant was prejudiced by plea counsel's failure to visit for lengthier periods of time to adequately apprise the defendant of the State's evidence. We find that the facts of this case are clearly distinguishable from the facts of *Dixon*.

¶ 50    The defendant also takes issue with postconviction counsel's omission of some of the claims he included in his *pro se* petition. We have reviewed the *pro se* and amended versions of the postconviction petition and agree that a few of the defendant's *pro se* claims were omitted.

¶ 51    The amended postconviction petition did not include the claim that plea counsel told the defendant what to say at the plea hearing; did not include the defendant's claim that plea counsel told him to plead guilty and that he would appeal the sentence and get a lower sentence; and did not include the defendant's claim that he had wanted a motion to suppress evidence filed as to count II because the victim had allegedly fabricated her claims.

¶ 52    Postconviction counsel did not include a claim that plea counsel advised the defendant on what to say during his plea hearing. We acknowledge that we do not know the details of what plea counsel allegedly told the defendant to say in court because the defendant did not provide us with those details. However, we note generally that advice from counsel to a defendant about comportment and attitude in the courtroom would not be disadvantageous or necessarily improper. We presume that postconviction counsel attempted to verify what plea counsel told the defendant to say in court but was not successful or learned that this claim was meritless. *Johnson*, 154 Ill. 2d at 241; *Wallace*, 2018 IL App (5th) 140385, ¶ 30. We find that the omission of this claim does not result in unreasonable assistance of postconviction counsel.

¶ 53    Postconviction counsel also chose not to include the defendant's claim that plea counsel told him to plead guilty, and that plea counsel would appeal to get him a lesser sentence. We do not know whether postconviction counsel reached out to plea counsel to find out if this statement was true. However, we may reasonably presume that postconviction counsel tried to determine the veracity of the defendant's claim but was not successful. *Johnson*, 154 Ill. 2d at 241. Regardless, the defendant was amply, clearly, and properly counseled by the trial court at the plea and sentencing hearing about the defendant's own obligation and the method by which he was responsible to file his own motion to withdraw his plea.

> "THE COURT: There's one last matter I need to advise you of, Mr. Marshall, and that is your right to appeal. If you are unhappy or dissatisfied with the judgment and

19

sentence of the Court today, you have the right to appeal. However, since you pled guilty, in order to exercise that right, you would first need to file a motion to withdraw your plea. That motion would need to be in writing and filed with this Court within 30 days of today's date. In that motion you must set forth every reason why you believe this Court should allow you to withdraw your plea. Any claim of error not raised in your motion would be deemed waived for appeal purposes. What that means is you could not then raise that issue on any subsequent appeal. To file that motion you have the right to be represented by an attorney of your choice. If you could not afford one, the Court would appoint the Madison County Public Defender's Office to represent you free of charge. Do you understand that, Mr. Marshall?

DEFENDANT: Yes, I do.

THE COURT: If I allowed you to withdraw your plea you would go to trial on these two charges. The State could reinstate the three charges that were dismissed pursuant to your plea[,] and you would go to trial on those charges as well. Upon conviction, you would be subject to any of the possible penalties which I previously explained to you[,] or which have previously been explained to you on those charges. What that means is all the negotiation that you and your attorney had with the State's Attorney's Office, those would all be off. Do you understand that?

DEFENDANT: Yes, your Honor.

THE COURT: If I denied your motion to withdraw your plea, you would then have the right to appeal to the 5th District Appellate Court in Mt. Vernon, Illinois. In order to do that, you would need to file a notice of appeal with this Court with[in] 30 days of the date I denied your motion to withdraw your plea. You could file that notice of appeal. You could have your attorney file it. Or you could ask that the clerk file it for you. *** Mr. Marshall, do you understand your appeal rights?

DEFENDANT: Yes, your Honor.

THE COURT: Do you have any questions at all about anything we've done here this morning?

DEFENDANT: No, your Honor."

As stated earlier in this paragraph, we presume that postconviction counsel was unable to verify the truth of the defendant's claim. *Johnson*, 154 Ill. 2d at 241. Additionally, postconviction counsel should not include claims that lack merit. See *Wallace*, 2018 IL App (5th) 140385, ¶ 30 (citing *Turner*, 187 Ill. 2d at 412). Accordingly, we are unable to find that postconviction counsel provided unreasonable assistance in omitting this allegation.

20

¶ 54    The amended postconviction petition also did not include the defendant's claim that he wanted plea counsel to file a motion to suppress evidence involving one of the charges to which he pled guilty. The charge in question was predatory criminal sexual assault of a child, A.S. The defendant was alleged to have placed his penis in the child's anus. To provide further background on the defendant's reasoning, we quote aspects of *pro se* pleadings and a letter he filed with the trial court. The defendant's *pro se* postconviction petition stated:

> "I ask my councel [*sic*] about My Motion to suppress the evidence on the Count 2 charge witch [*sic*] A*** S*** hated me and told her mother that she would say things about me to get me in trouble.

> Al*** the mother of the girls to[ld] my attorney William[ ] Starn[e]s III that they lie on me just to get [me] away from thier [*sic*] mother.

> ***

> I have been lie on bye [*sic*] kids that hated me the first day I met them because I wasn't their [*sic*] father and A[.S.] even text her mother and told her that she hated me and would say anything to get me away from her mother."

In the defendant's letter to the court dated April 1, 2014, the defendant wrote the trial judge that he was remorseful for what he did to As.S. (count III of the amended indictment) and admitted his guilt. However, "on the other charges sir I didn't do. I was cuss bye [*sic*] them children and there [*sic*] aunt Y*** S*** because I wouldn't loan her money[,] so she had them other two girls to lie on me Sir." In the defendant's May 7, 2014, *pro se* motion for pretrial discovery and an informational hearing, the defendant asserted that "the possibility exists that one[,] if not more[,] of my accusers are falsely accusing me solely on the reason of my race as I am white and they are of African decent [*sic*]."

¶ 55    A motion to suppress evidence would not necessarily fit into the factual setting raised by the defendant in that he claims that the victims and relatives of the victims were fabricating stories about the alleged sexual assaults. A motion to suppress is a legal vehicle by which a charged

21

defendant can seek to have evidence suppressed that was obtained in a manner that violated his or her constitutional rights. Here, the defendant just contends that potential witnesses have fabricated their statements based on his relationship with the victims' mother, because he is Caucasian, and because the defendant turned down a loan request from a relative of the victims. None of these allegations relate to the defendant's constitutional rights. If the defendant had opted not to plead guilty to the predatory sexual assault charge, he would have had the opportunity to call the victims' mother and aunt to determine what they knew. The statements made by these individuals are witness statements and cannot be construed as being made somehow in violation of the defendant's constitutional rights. Thus, as postconviction counsel would not be required to amend the petition to include unmeritorious claims (*Wallace*, 2018 IL App (5th) 140385, ¶ 30), we conclude that postconviction counsel's omission of this claim did not result in unreasonable assistance.

¶ 56    We have reviewed the defendant's claims that postconviction counsel provided unreasonable assistance. We find no basis in the record and in the defendant's briefs and arguments on appeal to conclude that his claim has merit. Postconviction counsel made amendments to the defendant's *pro se* postconviction petition necessary to "shape[ ] the [defendant's] claims into proper legal form." *Perkins*, 229 Ill. 2d at 43-44. We conclude that postconviction counsel did not provide deficient or unreasonable assistance in this matter.

¶ 57                                III. CONCLUSION

¶ 58    For the foregoing reasons, we affirm the Madison County circuit court's order dismissing the defendant's postconviction petition.

¶ 59    Affirmed.